IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
15 JUN 22 PM 1:47
OFFICE OF THE CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:14CR375 |
| vs. | PLEA AGREEMENT |
| JEFFREY BELMONT, | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Deborah R. Gilg, United States Attorney and Douglas R. Semisch, Assistant United States Attorney, and defendant, Jeffrey Belmont, and Dean A. Stowers and Jerry J. Sena, counsel for defendant, as follows:

I

## THE PLEA

A. CHARGE(S) & FORFEITURE ALLEGATION(S).

1. Defendant agrees to attempt to plead guilty to Count I of the Indictment. Count I of the Indictment charges a violation of Title 18, United States Code, Section 842(a)(1) and 844(a)(1).

2. This is a conditional plea agreement pursuant to Federal Rule of Criminal Procedure (11)(a)(2) in that the defendant reserves the right to appeal the June ___, 2015, decision of the district finding that the government has presented a sufficient factual basis for the plea. With respect to this issue, as indicated in Section II, paragraph A below, the United States maintains that the United States is not required to prove that the defendant manufactured explosives for the purpose of livelihood or profit whereas the Defendant maintains proof of livelihood or profit is an element of the offense. Defendant will advise the court as part of his plea that he did not manufacture any explosives for the purpose of livelihood or profit. Thus, this reservation of right of appeal shall include the related issue of whether an element of proof is that the United States is required to prove the defendant was engaged in the business of manufacturing

1

explosives for the purpose of livelihood or profit.

3.  In exchange for the defendant's agreement to plead guilty to Count I of the Indictment, the United States agrees to dismiss Counts II through IV of the Indictment without prejudice at the time of sentencing.

## II
## NATURE OF THE OFFENSE

A.  ELEMENTS EXPLAINED.

Defendant understands that the offense to which defendant is pleading guilty has the following elements:

1. The defendant engaged in the business of manufacturing explosive materials.
2. The defendant did not have a license, issued by the Attorney General, permitting him to act as a manufacturer of explosive materials.
3. The defendant acted knowingly.

Although the defendant agrees to elements 1-3 above, the defendant expressly reserves the right, as provided in Section I, paragraph A above, to challenge whether the government must also prove that the defendant engaged in the business of manufacturing explosive materials for the purpose of livelihood or profit.

B.  ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

1. A search warrant was executed at the defendant's home in Ralston, Nebraska on June 24, 2014. The search included a shed located at the rear of the property.
2. Immediately prior to the initiation of the search, the defendant advised an ATF agent that he had made some "fireworks" on the evening of June 23, 2014 and that they were located in the shed behind his house.
3. Sgt. McKinstry of the Nebraska State Patrol Bomb Squad assisted in the execution of the

search warrant. When he entered the shed, he observed numerous items associated with the clandestine manufacturing of what he described as M-series IEDs, and the shed appeared to be used primarily for this purpose.

4. A search of the shed yielded 36 completed IEDs inside a white plastic bag. This bag was next to a hydraulic press located on a workbench in the shed. The press had powder residue on it. Also located within the shed were 28 partially completed IEDs (which were just missing fuses) which were located in a plastic bucket. Also located in the bucket was a coil of hobby fuse and a homemade pointed punch capable of being used to insert a fuse into the cardboard tube of the IEDs. Also located on the workbench were several bags containing empty tubes, end caps, and fuse for the construction of additional devices.

5. Sgt. McKinstry determined there were 24 completed M-series IEDs measuring 2" x .75" and 12 completed M-series IED's measuring 2.25" x 1". The 28 partially completed IEDs measured 2" x .75". McKinstry reported these types of items contain well in excess of 130 milligrams of an explosive material, to wit: flash powder. These are commonly referred to as M-80s. Sgt. McKinstry rendered an opinion that the completed IEDs were functional explosive devices. Susceptibility tests conducted by Special Agent Kessler on the powder contained in the IED's found the powder to be energetic meaning that it reacted consistent with flash powder. Lab tests conducted by the ATF Forensic Science Laboratory confirmed that these items contained a perchlorate explosive mixture comprised of potassium perchlorate and aluminum powder. These are the primary ingredients for flash powder.

6. Pursuant to 18 U.S.C. §841(d), the Attorney General publishes a list in the Federal Register detailing explosives which he/she deemed to be within the coverage of §842 and related statutes. Flash powder is contained on that list.

7. ATF Explosives Enforcement Officer Richard Gonzalez examined samples of the IEDs recovered during the search and determined that they were designed to function by explosion. Accordingly, Gonzalez rendered an opinion that the IEDs are properly identified as an explosive as that term is defined in Title 18, United States Code, Chapter 40.

8. A search of the home revealed multiple large containers of chemicals which contained in excess of 1,000 pounds of potassium perchlorate and in excess of 1,000 pounds of aluminum powder. These chemicals are not explosives materials when they are not mixed together. Large spools of fuse were also recovered. The government's investigation showed defendant sold potassium perchlorate and aluminum powder. The government has no historical evidence that defendant has sold any explosive materials or items, however.

9. In addition to the IEDs described above, investigators found the following items in the shed: (a) metal mixing bowls, funnels and sifting screens; (b) a white trash bag containing 45 candy stripped cardboard tubes measuring 6"x 1.25" with one plastic end cap installed; (c) a cardboard box containing 765 candy stripped cardboard tubes of assorted sizes; (d) a cardboard box containing 53 red cardboard tubes 2.5"x1" in size; (e) 104 red cardboard tubes 2"x9/16" in size; (f) a bucket containing 85 red cardboard tubes 2.5"x1" in size and two ½"x1.25" silver cardboard tubes with hobby fuse inserted into each tube, plus one red and white stripped tube 3"x5" in size and various paper end plugs; (g) a plastic trash bag containing assorted plastic and paper end caps and plugs; (h) a plastic container with hydraulic press instructions, pyrotechnic recipes, a small metal bowl, and other tools/items; and (i) a powder measuring kit.

10. In excess of 1,000 candy stripped cardboard tubes of various sizes, most with one end cap installed, and assorted sizes of end caps were found in the kitchen of the home along with a pair of men's tennis shoes which appeared to be coated with flash powder residue. An ATF explosives canine alerted on the tennis shoes.

11. Various invoices and shipping documents were found in the home and/or on computers seized from the home which each reflected purchases of small quantities of tubes and end caps consistent for use in making IEDs. These documents indicated the items were being shipped to the attention of the defendant during the time period of 2012 through June 9, 2014.

III

## PENALTIES

A.  COUNT I. Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A maximum 10 years in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not more than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

## IV

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## V

## PARTIES' SENTENCING RECOMMENDATIONS

A.  SENTENCING GUIDELINE CALCULATIONS.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable). Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. The parties agree that the applicable sentencing guideline is §2K1.3. The parties further agree that none of the enhancements in §2K1.3(b) apply.

2. The government had a drug test of defendant's hair performed with negative results, and the government is aware that defendant has presented evidence of other drug testing, and a medical opinion from defendant's treating physician indicating that defendant was not a regular user of marijuana. Given the fact that the United States has agreed to dismiss the drug user in possession counts (Counts III and IV) as part of this Plea Agreement, the United States agrees that it will make its sentencing recommendation utilizing the guideline range applicable to a base offense level of 12 and does not intend to dispute the foregoing evidence for purposes of sentencing, and it may be submitted to probation and at the time of sentencing without objection.

3. The government agrees defendant should receive an offense level reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility unless some action of the defendant described in paragraph B, below demonstrates a lack of acceptance of responsibility. If defendant is granted a two level reduction for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

4. The parties agree that neither the defendant's challenge to the base offense level nor the defendant's challenge to the elements of the offense under §842(a)(1) shall affect his eligibility for acceptance of responsibility under §3E1.1.

1.
B.  ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the United States will <u>not</u> recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or

2. Denies involvement in the offense, gives conflicting statements about that

involvement, or is untruthful with the court or probation officer, or

3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies) seized or forfeited in connection with this case.

**The parties further agree the defendant will make no "blanket" objections to the criminal history calculation (specific objections based on stated grounds are permitted). Objections to criminal history on the basis that the defendant was not the person who was convicted of the offense(s) described in the presentence investigation report or on the basis that the defendant was not represented by counsel in connection with such conviction(s), if determined to be unfounded, are evidence the defendant has not accepted responsibility and the parties agree no credit for acceptance of responsibility should be given.**

C.  ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553, and that the United States may oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A, above.

D.  CRIMINAL HISTORY.

The parties have no agreement concerning the defendant's Criminal History Category, except that if defendant is determined to be a Career Offender, the parties agree that the defendant is automatically a Criminal History Category VI pursuant to U.S.S.G. § 4B1.1(b).

E.  "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

7

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

F.   REINSTATEMENT OF REMOVAL, DEPORTATION, OR EXCLUSION.

The defendant admits that the defendant was the subject of a previous order of removal, deportation, or exclusion. The defendant agrees to the reinstatement of that previous order of removal, deportation, or exclusion. The defendant admits that defendant does not have a fear of returning to the country designated in the previous order. If this plea agreement is accepted by the court, defendant agrees not to contest, either directly or by collateral attack, the reinstatement of the prior order of removal, deportation, or exclusion.

G.   RECOMMENDATION REGARDING CUSTODY

The United States agrees to recommend the defendant be sentenced at the low end of the sentencing guideline range.

## VI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. ' 3742 of any sentence imposed, except:

(a) As provided in Section I above, (if this is a conditional guilty plea); and

(b) A claim of ineffective assistance of counsel.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any postconviction proceedings, including any proceedings under 28 U.S.C. ' 2255, except:

(a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII

## **BREACH OF AGREEMENT**

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement, and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII

## **SCOPE OF AGREEMENT**

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the

defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

    C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

    D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

    E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

    F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties. .

## IX

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

    This agreement ends all plea discussions. No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

X

<u>DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT</u>

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA
DEBORAH R. GILG
United States Attorney

6/22/15
Date

DOUGLAS R. SEMISCH
ASSISTANT U.S. ATTORNEY

06-11-15
Date

JEFFREY BELMONT
DEFENDANT

_____
Date

DEAN A. STOWERS
ATTORNEY AT LAW

06/11/15
Date

JERRY J. SENA
ATTORNEY AT LAW